### EARLE et al. v. A. W. DRAKE MFG. CO. et al.

(District Court, M. D. Pennsylvania. May 10, 1923.)

#### No. 324.

1. **Patents ☞112(4)—Decision of Patent Office as to priority of invention entitled to great weight.**

The decision of the Patent Office on a contested question as to priority of invention must be accepted as controlling on that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction.

2. **Patents ☞90(2)—Right given by priority of invention may be lost by laches.**

As between independent inventors of a device, the one who is prior in time may lose his right to priority by failure to use diligence in applying for a patent, or in making his invention known to the public.

3. **Patents ☞328—1,261,222, for fly swatter, not infringed.**

The Earle & Lowe patent, No. 1,261,222, for a fly swatter, *held* not infringed if given a construction that will save it from anticipation by the Gomber patent, No. 1,161,654.

In Equity. Suit by Fred E. Earle and others against the A. W. Drake Manufacturing Company and George E. Gomber for infringement of patent. Bill dismissed.

Joshua R. H. Potts and Brayton G. Richards, both of Chicago, Ill., and Knapp, O'Malley, Hill & Harris, of Scranton, Pa., for plaintiffs.

W. L. Houck, of Scranton, Pa., and E. G. Siggers, of Washington, D. C., for defendants.

WITMER, District Judge. The parties to this controversy have limited the issue to prior invention. Defendants, on November 23, 1915, obtained a patent, No. 1,161,654, for a fly-swatting device on application filed March 4, 1915. The plaintiffs obtained a patent, No. 1,261,-222, for a fly swatter, on application filed May 29, 1915. The progress attending plaintiffs' application was not rapid. Against its allowance, defendants' patent, after it had issued, was cited as reference, though it was finally allowed April 2, 1918. This patent in claim 3 is said to embody the alleged invention in dispute:

"Claim 3. A fly-killing device comprising a handle, and a flap on said handle formed of a perforated sheet of soft, flexible, nonabrasive material, substantially as described."

Defendants, August 6, 1918, applied for reissuance of their letters patent embodying this claim, designated as claim 9 in their reissued patent, allowed July 9, 1921. These two claims are admittedly similar

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and said to read on defendants' manufactured article; hence the issue as presented. Notwithstanding the controversy before the Commissioner of Patents, and the application following, relative to the reissue, the matter of priority of invention is open and for this court on the showing made.

[1] The decision of the Patent Office, affirmed by the Supreme Court of the District of Columbia, in this contest, as to priority of invention, is entitled to great weight, if not absolutely controlling. Automatic Weighing Machine Co. v. Pneumatic Scale Corporation, 166 Fed. 288, 92 C. C. A. 206. In Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, it was said that upon principle and authority it must be laid down—

"as a rule that where the question decided in the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

The plaintiff has successfully met the requirements laid down by the Supreme Court. The testimony of the witness William L. Earle, produced and testifying in open court, corroborated the witnesses who had heretofore testified, and thoroughly convinced the court that Earle & Lowe were the first and original inventors of the device claimed by the contestants under their respective claims. Earle was not a witness in the proceedings before the Commissioner of Patents. He was, at the time of the litigation, serving overseas in the World War as a Y. M. C. A. secretary. He is not related to any of the parties, and by profession is a minister of the gospel. He has been an acquaintance of Frank G. Lowe from his earliest recollection and is now 41 years old. He visited the Lowe family while they lived on Avery avenue, Detroit, and there saw a fly swatter, without perforations, in use by the family. The fly swatter was then impressed on his mind through the sickness of their daughter Geraldine, who lay near the window where the swatter was kept and used. The Lowes later, he says, between 1905 and 1906, moved into a new house on Commonwealth avenue, where he, the witness, resided with them until he was married in July, 1910. The fly swatter was used in the new house until worn out, when another was made and used, containing holes or perforations, with a flat handle. He saw in use the later fly swatter as early as 1908, and up to the time he left, after his marriage. He also stated that he sold about 300 of the swatters in 1915 or 1916, while selling aluminum ware. The assistance of this testimony convinces the court that what may have appeared as fabricated and unworthy of confidence in the testimony heretofore offered, notwithstanding the loose and indifferent statements of Lowe, nevertheless the same, as now appears, is entitled to more than mere dismissal as a family invention for a purpose.

True, those who testified were either members of the Earle or Lowe families, or associated with them; but this should not discredit them more than Gomber and his wife, who are the only witnesses for the contending device. The matter of a fly swatter in its initial and crude state is not calculated to set the community afire with gossip. From the

conduct of the parties, they themselves, in its early inception, considered their product of very little moment indeed. The inventive act of Earle & Lowe was completed not later than 1906, and then they contented themselves by the use of their device in their own families, without any effort to introduce same to the public by patent or otherwise, though it does not appear that any effort of concealment was made on their part. Their conduct was simply one of indifference, being satisfied "to enjoy it themselves, without any thought of having it patented," as Lowe admitted. Earle says that "probably we did not feel like spending the money for a patent," as an excuse for delaying the patent application. "We waited for a favorable opportunity to put it on the market." In the meantime, he did not say that their invention was publicly known. It is certain that for some reason, not satisfactorily explained, the public was not taken into confidence in the enjoyment of the fruits of the efforts of Lowe and Earle for at least a period of nine or ten years after their so-called invention, so that when they finally reached the Patent Office others had preceded them.

[2] The diligent shall not only stand before kings, but they are preferred everywhere, even in court, when invoking the provisions of the Constitution, calculated "to promote the progress of science and the useful arts." Equity favors him who gives the public the knowledge of his invention, having expended his time, labor, and money in discovering and patenting that which he and others, in good faith, have been led to believe has never been discovered and perfected by reason of the indifferent, supine, or willful act of one who may, in fact, have discovered it long ago. Pennock et al. and Sellers v. Dialogue, 2 Pet. 1, 7 L. Ed. 327; Shaw v. Cooper, 7 Pet. 292, 8 L. Ed. 689. In Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68, where the court found that the supineness of the patentee was unexplained and inexcusable, it was said that "a principle akin to the doctrine of equitable estoppel applies."

It is true that Gomber, the assignor of the competing patent, conceived his invention some four or five years before he entered his application for a patent. The delay is satisfactorily accounted for in the different forms of swatters submitted, showing the diligence of the inventor and his effort in bringing his device to the highest perfection possible before effort was made for protection as a reward for the inventor's ingenuity and effort. Earle & Lowe endeavored to show that, while they were not first in making an effort to have the device patented, they were the first to place the same upon the market. This they did not establish by convincing proof. The court is inclined to believe that the defendants were first to the market as well as to the Patent Office, and thereby succeeded in first making the public its debtor. How does this apply to the resulting patent and the alleged infringing device manufactured by the defendants?

[3] Defendants' manufactured product, in evidence as Exhibit No. 22, is an exact reproduction of the drawings and as described in the specifications of the Gomber patent, No. 1,161,654, covered by seven claims, of which the following will serve:

"6. A fly swattter comprising a substantially flat, thin, elongated and substantially rectangular web of rubber, with a handle socket at one end and formed on its opposite faces with series of parallel ribs diverging oppositely from the longitudinal center line of the web toward the end remote from the handle socket, said web being provided with a marginal or border rib and perforated between the ribs, with the diverging ribs of one face coinciding with those on the other face, and all of angular or V-shape in cross-section."

Is this the device that was covered by claim 3? If it is, claim 9, being similar in the reissued patent, did not enlarge on defendants' previous patent. In other words, it only served to set forth in different words what they had already secured by previous patent.

What is the position of the parties in this suit, in relation? Plaintiffs insist that defendants' manufactured device is an infringement of their patent, claim No. 3. Defendants concede this by insisting that they are not infringers, because of their rights secured to them by claim 9 of the reissued patent. These claims being similar or interfering patents, they invoke the provision of section 4918 of the Revised Statutes (Comp. St. § 9463) for relief. The parties plaintiff and defendant assert that the claims of their patent, 3 and 9, respectively, read on the defendants' manufactured swatter. If this is true, it being conceded that this swatter infringes upon these claims, the court concludes that claim 9 does not enlarge upon defendants' reissued patent, since the manufactured device is within the original Gomber patent. If the proposition of the parties is unsound, and there is no infringement, then the plaintiffs are likewise out of court. In any event, as the case may turn, the plaintiffs are not entitled to relief.

In view of the conclusion reached, it will not be necessary to determine whether the Commissioner of Patents has exceeded his power in granting the reissued patent.

The bill is dismissed.